Mr. Bargill, you may have mispronounced your name, you can pronounce it for us. Ari Bargill. Good morning, your honors, and may it please the court, my name is Ari Bargill, and I'm here on behalf of the appellants True Source, Medical Cannabis, and Clarence Crowcroft. I've reserved three minutes for rebuttal. This case asks a simple question, whether First Amendment protections apply to Mississippi's ban on advertising by medical marijuana dispensaries. The district court erred because the answer to that question is yes, for three basic reasons. First, the commercial speech doctrine is oriented around the idea that consumers should be able to hear truthful, actionable information, and Mississippians have a clear interest in hearing about the state's legal medical marijuana program and how to participate in it. Second, the federal prohibition on medical marijuana does not drive the analysis here. Under prong one of central Hudson, Mississippi law is what matters when asking whether the commercial transaction proposed is legal. And third, federal courts can and routinely do grant relief in constitutional cases like this one. Now, beginning with my first point, I'd like to focus on the animating principle of the Virginia Board of Pharmacy. And there, the Supreme Court explained that what's critical in our marketplace is the free flow of information between advertisers and would-be consumers, and that the marketplace functions best when intelligent consumers have access to truthful information that they might act on in the marketplace. And here's what that marketplace looks like in Mississippi. It consists of an elaborate regulatory system under which the state of Mississippi has authorized the sale of medical marijuana by licensed medical marijuana dispensaries. It allows people with qualifying conditions to obtain a state-licensed medical marijuana card which they can take into any one of these facilities and purchase an amount of marijuana. Just to get to the, because this case fascinates me, but that three-part description is correct. Those aren't three separate arguments, though. In other words, would I be wrong if I started with the second, that we have to get past prong one of central Hudson? In other words, do you agree under Thompson, it's dispositive, it's a threshold question, or is that oversimplifying? I think it is oversimplifying, and I think that's part of where the district court erred is in that oversimplification. I think in the greater New Orleans case, for example, the Supreme Court said that the central Hudson test is a balancing test and no one prong is dispositive. But then Thompson comes later. Thompson comes later. They didn't really question in Thompson whether the first prong was at issue. Is it necessary to your argument that we don't say that's a threshold, dispositive first question? I don't think so, because as I was about to discuss with the court, I'm not sure that federal law actually comes into play when weighing whether the first prong is satisfied in this case. Okay. That's sort of where I thought the argument's going. Am I right that you've got to go one of two ways with that? One is, if it's legal in the state, central Hudson, that's the prong one issue. We ask, what does the state do? Or is it some version of what I thought was your 44 Liquor Mart argument, that if the state starts to approve and regulate a market, then they can't restrict speech related to that market? Are those the two directions, or is it a third legal argument? I don't think there's a third direction. I think there are two directions, but I would describe them first as, in the latter scenario where you described, where the conduct is legal under state law and the speech that promotes the conduct is being prohibited. I think under 44 Liquor Mart, you know, we look at state law and we conclude from that alone that the speech ban at least survives past prong one, and then the court can consider the other prongs. I think to the extent that the court wants to consider federal law, or it feels as though it needs to consider federal law, I think there are then two directions that the court can go in there. I think on the one hand, one of the things that the U.S. Supreme Court said in a case like Ed and Field v. Fane, is that where a speech prohibition sweeps up more speech than just the speech that would promote, you know, illegal or misleading conduct, then in that scenario, you advance past prong one because it becomes a mixed question. And you specifically ask the district court here to parse and say, okay, fine, maybe Central Hudson doesn't allow us to advertise to promote the product, but we've got a lot of other commercial speech just about our business. Did you make that request to the district court? I'm not sure that we said the latter part, Your Honor. We definitely said, look, as a doctrinal matter, and I think this is what should carry the day, frankly, is that when a state authorizes a course of conduct, part and parcel with that authorization is a legalization of speech promoting that conduct. I think that was... Promoting the conduct. Yes, Your Honor. But Title 21 specifically criminalizes advertising for a controlled substance. Under federal law, Your Honor? Yeah. I think that's right, but I think that sort of underscores or validates our argument here because in that sense, in that scenario, the federal government has passed the Controlled Substances Act, which regulates controlled substances, of course, and they've passed an attendant prohibition on advertising. They're able to do that because they've done the predicate thing, which is to pass a prohibition on the conduct. Now, it's the case that they've also said that they're not going to enforce those prohibitions vis-a-vis state legal medical marijuana operations, and so to the extent that the court is going to consider federal law, as I said, there's the Ed and Field v. Fain argument where the court should weigh whether it's a mixed question, but then there's also... Coming to a federal court to get an injunction, in many ways, that looks like it reduces to committing a federal crime. In other words, you get an injunction so you can advertise, but Title 21 says that's a  I would point, Your Honor, to the Northeast Patients Group case where the second sort basically confronted a constitutional question arising from the Dormant Commerce Clause in a state legal medical marijuana operation. But in the First Amendment context, is the only authority the Seattle events case? I think that's right. There are two state court cases and they've both been briefed extensively, but if I may go back to the Northeast Patients Group case, there, what the plaintiffs wanted to do was not just advertise marijuana, they wanted to sell it. And they challenged the restriction imposed by the state saying you're discriminating on the basis of our state of residency, and the court then engaged in an analysis, and one of the things that the court said was, look, whether something is illegal under federal law might resolve a separate question about maybe preemption or whether the state medical marijuana act is legal in light of federal law, and I think that's basically true here. That's the same question that they're trying to tee up before the court, and it's not really in front of it, but then weighing what that marketplace ought to look like to determine whether what the state was doing was anti-competitive, the court considered not just the prohibition under the Controlled Substances Act, but also subsequent things that Congress has said vis-a-vis state legal medical marijuana. And in that case, they said, yes, it's also surely true that the Controlled Substances Act regulates medical marijuana, but it's also true that every year since 2014, Congress has disavowed any interest in having the Department of Justice prosecute state legal medical marijuana operations or expending any resources in the furtherance of that. So it's not that the federal prohibition doesn't matter, but even if you take it into consideration, I think the outcome ultimately is the same because it doesn't resolve the First Amendment question, which I think is doctrinally distinct, as the Second Circuit noted, from the broader question or the obvious reality that federal law prohibits marijuana. Federal law, let's say, prohibits, to come up with a gun example, felony in possession of guns or altogether machine guns. If a state then says, well, we're going to restore your rights, you've got a felony, but five years later, as many do, you can have a gun, would gun stores be able to advertise to felons saying, please come get a gun in violation of a federal felony? In other words, does your argument depend on the non-enforcement? No. No. No, it doesn't. And I think in that scenario, Your Honor, I think that might resolve maybe the prong one question because you have no attendant prohibition on the underlying conduct. But being that it's the central Hudson test, the government can come in and try to meet its burden to explain why it's done the one thing that the U.S. Supreme Court said is the regulatory tool of last resort, which is to ban speech without an underlying prohibition on the related conduct. It's a very high burden, and it exists that way for a reason. That's because governments, generally speaking, when they see a problem with a certain course of conduct and they want to regulate it, the requirement is that government go ahead and regulate the conduct. But when government doesn't do that, and instead the regulation targets first speech while permitting the underlying conduct, courts look at that with great skepticism. That's Rubin v. Coors, 44 Liquor Mart, Thompson v. Western Medical Center, which I think actually has some parallels here in the sense that that was an instance where pharmacists were suing about the ability to sell compounded drugs, and the government said that's fine as long as you don't tell people about it. And that's basically what we're dealing with here, Your Honor. What about Pittsburgh Press and the fact that the court did say there you can prohibit a consumer from advertising narcotics? It did say that, and we don't quarrel with that bottom line holding, but what Pittsburgh Press also said was that that's incidental to an appropriate regulation on the underlying conduct that that speech promotes. And so it'll always be the case, and it's still the case, that to the extent that somebody wants to promote conduct which is inherently illegal, or not inherently illegal, but it would result immediately in the consummation of an illegal act, that the government can regulate that as part of its concomitant power to restrict speech that promotes illegality. And, you know, the Supreme Court has explained that that's necessary because, you know, it would be a toothless regulation if the government could say you can't do thing X, but then would have to allow rampant promotion of thing X. And so government is allowed to regulate what the term is inextricably linked to that. But that all seems to soften the protection you get from the First Amendment. The 44-licker mark world where you're regulating something, and that line of authority, the inextricably linked, is actually allowing the government to then restrict commercial speech. But you're here trying to say the opposite. Well, it allows the government to restrict commercial speech to the extent that the government has first regulated the underlying conduct, and that's really where the rubber meets the road here. And Mississippi has. Mississippi has not regulated the underlying conduct. In fact, what they've done is they've created an entire marketplace to facilitate that conduct by allowing it to take place. But the Cannabis Act specifically says it limits significantly the advertising and the regs just take, enforce that, right? Well, the act basically says here are a couple of things that you can do and then delegates to the Department of Health the rest of the authority to regulate advertising within the medical marijuana space. And they've taken that discretion and said there can be no advertising in any medium whatsoever. But there's no Mississippi State Court case saying that the department exceeded its authority under the statute, is it? In other words, the statute, you're not saying the statute and the regs are inconsistent with each other? No, Your Honor. They're doing what the statute basically empowered them to do, but they're doing it in an unconstitutional way. And one of the ways we know that is, you know, if we're applying the central Hudson test, the court's going to look at whether the least restrictive means are being used, whether there's a substantial interest, and it's being directly and materially advanced. And if you look at the regs, what the Department of Health also did, in a more appropriately tailored way, is restrict the way that you can advertise to minors. It restricts how you use the medical marijuana or the marijuana leaf in your advertisements. It prohibits you from promoting overconsumption, any of these things. We haven't challenged any of that. And so, you know, they've been given discretion, they've abused that discretion by way of a First Amendment violation, and that's what we're in court about. So you're saying we overlooked the first prong of the central Hudson test, which refers to, quote, lawful activity? I think that's right. And I think the district court overlooked the first prong of the central Hudson test by looking immediately to federal law and basically making a determination on the supremacy clause and the commerce clause. This is a First Amendment case, and the First Amendment question doesn't turn on what the supremacy clause means or what the commerce clause means. I think it's true that if somebody wanted to come into court as a defense for a conviction or a charge for possession of marijuana, it would be the case that they can't mount a defense on the basis of the state medical marijuana act. But that's different from what we have here, where the state of Mississippi has enacted and created an entire regulatory framework to facilitate the sale of medical marijuana and then is simultaneously saying you can't advertise this legal product based on a federal law that we didn't promulgate, that we can't enforce, and we're using as an explanation for why we're wielding a state power that we've effectively relinquished when we decided to legalize the sale of this product in our state. So under the test that you propose, does it matter? Let's take a hypothetical in which the state never prohibited this conduct, but federal law always has. Would your test apply in the same way, or does it matter, as you just told us, that at some point the state decided to deregulate and establish a regulatory framework? So I think Your Honor's hypothetical basically resolves the prong one question about whether it's legal, because you'll look to state law, you'll see no attendant prohibition on the underlying conduct, and that'll resolve prong one in favor of the person challenging that restriction. Now, there could be a scenario in which the government can come in with evidence, I can't think of one, but it's possible, where they would say, look, here's our substantial interest, here's why we think banning speech and not conduct directly and materially advances that interest, and here's why we should win and meet our burden under central Hudson. Like I said, I can't envision a scenario where it would work that way, but that is the product of an understanding of First Amendment law that establishes that where government wants to regulate something, the first move is to regulate conduct. If there's a concern about what people are doing or how people might, you know, act in a given marketplace, then you can regulate the marketplace. But what you can't do and what will always be looked at with intense skepticism are scenarios where the government doesn't do that, but then pivots immediately to what the court in 44 Lickermark described as basically the most awesome exertion of regulatory authority that the government has, which is a restriction on speech. So you still need, don't you need authority that the First Amendment protects something that is a federal crime, just because the state hasn't made it a crime? That's basically what you're asking for. Well, you know, we have to admit, and I think the other side has to also, that there's no law that really is squarely on all fours with all of this. But Your Honor does, you know, remind me that the case that I think comes closest is the Dunnigan decision from this circuit from 1983. It's a post-Central Hudson case. And there, this was a time when alcohol was illegal in Mississippi, advertising alcohol was illegal in Mississippi. And there were counties that were opting out of that illegality, and there were dry counties and there were wet counties. And that's very similar. It's a very similar allegory to what we have here. But that's the Bigelow world, right? That is co-equal sovereigns, or entrusting, right? The elephant in the room here is the supremacy clause. Well, I think it's, you know, you do have a big sovereign and a little sovereign here, whereas in Dunnigan you have, you know, a smaller sovereign and then a subordinate unit of government, although not a sovereign. But I think it ultimately doesn't change the First Amendment question that was resolved in that case, where the court didn't say, hey, you know, this is a product of the relationship between these two governmental entities. The court's conclusion was, there are places in Mississippi where you can lawfully sell this product, even in spite of a state law that says that you can't. And that's legal enough for purposes of the First Amendment analysis under Central Hudson to get past prong one. Now, the court ultimately upheld the advertising restriction in Dunnigan, I think on a basis that probably doesn't survive the rationale in 44 Liquor Mart, and I think Judge Higginbotham's dissent is probably what the law would be today. But nonetheless, I think that is probably the best example of that sort of dynamic with an independent sovereign and then a subordinate unit of government. Your Honor, in my time remaining, I just want to add one thing before I eat into my rebuttal. It's important to note what... Your time has expired unless you want to use part of your three minutes of rebuttal. You know what, Your Honor? If I were you, I'd save it. I'll save it. Thank you. All right. Mr. Matheny? May it please the Court, Justin Matheny on behalf of the Defendant Appellee and Mississippi State Officials. The officials have been sued under 42 U.S.C. 1983. Section 1983 requires the plaintiffs to establish that the state has deprived them of a right secured by the Constitution or laws of the United States, but there's no right to advertise a marijuana business that is secured by the federal Constitution or federal law. The laws of the United States outlaw marijuana business and make advertising it illegal activity, and the Supreme Court has ruled and reaffirmed time and again that there is no First Amendment right to advertise illegal activities. So the District Court was right to reject the plaintiff's 1983 claim on a 12b6, and this Court should affirm. I want to go straight to the point about the threshold issue, threshold question, because I think it's a key part of the case. I think it's a key part of our case. You mentioned Thompson. I look at Thompson. Thompson says it's a threshold issue, but I think perhaps even more importantly, I look at this Court's decisions since Thompson, since Central Hudson. Every decision that I see from this Court that applies Central Hudson applies it as a step-by-step inquiry. You have the first step. Is it illegal activity? If it's illegal activity, you stop there and you end. A good example of that would be Ford Motor Company 2001 decision in this Court analyzed whether a Texas law was, whether advertisements under Texas law had any protections. But of course, their point is, when you say, oh, it is an illegal activity, there's no federal law enforcement, not even Article I, neither Article I, neither Article II. Both political branches are not enforcing this, correct? So it's Mississippi trying to enforce federal criminal law. Well, no. No? Even unenforced federal law still creates? Is that your position? No. It's not enforcing federal law. It's the Central Hudson inquiry about whether or not the activities they are performing are illegal activities. And I think your question raises an important point here, and I think the environment that we're operating in here and exactly what laws are out there are significant. You've got the control? To whether or not something's lawful or unlawful under federal law, it doesn't matter if the executive branch is enforcing it, according to Mississippi. So that applies not just to medical marijuana, it also applies to immigration crimes. Doesn't matter if the federal government's enforcing it. It's still a federal crime? That's right. Okay. That's right. And the cases I would look at this for, Your Honor, specifically in this context of what the Rohr-Bakker-Farr amendments mean and what the government can do and where they can go. I mean, you look at McIntosh, the Ninth Circuit case said in our brief, the First Circuit case, Bilodeau, the Sixth Circuit case, Trevino, I mean, all these courts that are looking at it agree. Marijuana is not legal. The federal government has not legalized marijuana by restricting prosecutorial discretion, DOJ's prosecutorial discretion. I mean, I'll put it this way. Maybe the best example of this is in McIntosh, page 1178, 1179, footnote 5, court explains, like, look, if you do any sort of marijuana business, you have criminal liability. It may be suspended prosecutorial discretion by virtue of not being able to prosecute. But isn't there a lot of irony in Mississippi's position? Am I right that if Congress decided to end prosecution of medical marijuana, you wouldn't be able to do a blanket ban? If Congress removed the federal legality, we'd be in another world. We'd be looking at all four prongs of central Hudson, right? We would have to move on to 239. Okay. And what about if neighboring state Louisiana legalized medical marijuana? Then under Bigelow, Mississippi wouldn't be able to have the ban. But it's sort of ironic when Mississippi itself legalizes, not the federal government, not the neighbor, Mississippi legalizes. Suddenly Mississippi can say, oh, but we get to completely close down commercial speech. And I need to push back on a premise. Yeah, do. On the Bigelow rule. I mean, Bigelow's important. Right. That's an important limit here that you see in the drug paraphernalia cases and things that are cited. Louisiana legalizes medical marijuana. Can Mississippi ban advertisements in Mississippi promoting purchases from Louisiana? No. Right. That's Bigelow. But when it's illegal everywhere, as it is under the CSA, even though it's the prosecutor's tora discretion is suspended, even though DOJ can't spend funds to prosecute a marijuana business transaction today, the same, I mean, your hypothetical, I take it the same way. If, if Congress went the other way, if they, if for some reason the next time around the Rohrabacher fall amendment didn't make it in all of a sudden, all the marijuana business, all the transactions that have taken place over the past five years, free game for, for DOJ to. I'm not sure they're saying free game. Here's my question. I don't know what Mississippi law is, the intricacies of it, but are these, are, are his clients not even able to promote, promote their product by saying, if you're having a fatal overdose, this is what you do to stop from dying. They can't do that under Mississippi law. No, I'm glad you brought that up too, because that's something that appeared for the first time in their reply brief. This notion that somehow that they have some things that they're selling, some information that they're putting out that's legal and some that's illegal under the Mississippi regs, what you have to do is you have to turn first off, I should say this. Start with this. The challenge here is only about the commercial speech. There's not any other kind of, um. But it's commercial to say where you are. It's commercial to say what products you have, what your hours for your store are. They're doing that. You're not interpreting your regs to disallow that. I'm asking you, what about promoting this product by telling people, if you overdose, here's what you do to survive. You can, can you, or can't you do that in Mississippi? You can. You gotta look. You can. You gotta look at 9.4, 9.41 et sec in the administrative rules that are cited in the briefs. Those are, are things that are educational materials that are not advertising. Okay, but that makes me think we don't have this rock, paper, scissors thing that the district court had. Because now, why are we even looking at a showdown between the supremacy clause and the first amendment? What we should be doing is maybe remand and say, oh well, Mississippi's Deputy Attorney General, whatever your title is, is saying you actually can do a lot of truthful speech. It's just some that you can't. No. What I'm saying is, they brought their challenge, they're challenging the advertising regs. Now what we're talking about there is something that the regs don't even consider advertising that they're not challenging. I mean, there's parts of the regs that they disavow in their complaint that they're, they're not challenging. And that's not even disavowed in the complaint because it's not even brought up in the complaint. Okay, but so they, so it may help them. You, in Mississippi, you can promote your business, you just can't promote the product. Is that what you're saying? You can, under 9.41 at sec, there is a laundry list of things that you can do in order to, that do not, are not classified as advertisements, that are educational materials. And, I mean, it also brings to mind this, Your Honor, I mean. You can promote safe use of marital marijuana. You can do, yes or no? Yes. Okay. And that's, I think that's the point of the regs. Okay. And, but, I mean, it also highlights this. We're not talking about anything other than commercial speech because that's the only thing that they challenged, that's the only complaint that they brought. Our view is not that, say, for example, we could prohibit advertising by all Republican medical marijuana businesses but not Democrats or something like that. It's content. It's viewpoint neutral. It's straightforward. It's only a commercial speech challenge. That's why the commercial speech doctrine applies. It fails at step one and you don't have to get to the other parts. A few other things that were brought up. Greater New Orleans was brought up. Greater New Orleans didn't say that you fudge together all three factors. Greater New Orleans and what Justice Stevens said there was more nuanced and I think more important than that. That was thrown out there at the beginning of the opinion but they've not pointed to any case that has actually said, oh, you fudge all three together or, you know, the illegality inquiry depends upon something that you're looking at at steps two, three, or four. I thought Greater New Orleans said they're interrelated. That's the basic quote but it's more nuanced than that because, and again, I think what I look to is that the opinion may say what it says. I can agree on that but no court has ever applied it that way. No case . . . Well, if it's the Supreme Court, we better start applying it that way. I disagree that that means what they say. It means that you somehow look past the first threshold question when A, in Thompson, after Greater New Orleans, that's what the Supreme Court said to do and this court has been doing that all along. That's my view there. On . . . well, let me mention Dunnigan. Dunnigan is just another version of the Bigelow Rule. What you had in Dunnigan was advertisements dealing with alcohol, legal some places in Mississippi, not the others. En banc court says, I think it's akin to an application of the Bigelow Rule, if it's legal some places, illegal others. You can advertise the checkerboard. You can advertise across the checkerboard. What we have here is something that's illegal everywhere. So Bigelow Rule doesn't apply. What about the larger argument extrapolated from 44 Liquor Mart, that if the state's essentially create a regime that I'm assuming you'd admit is in violation of federal law. In other words, to the extent that you're raking in tax revenue and you're creating an industry about the transactions involving marijuana, Mississippi itself has created a regime that's violating federal law. But then when Mississippi wants to further exert pressure by banning speech, it suddenly says, oh, well, federal law protects us. It just seems like a disconnect. It doesn't seem like what the court contemplated in Central Hudson. Well, as to 44 Liquor Mart, here's where I understand that their argument, and they never mentioned 44 Liquor Mart in the district court, but now it's all of a sudden the main event here. In 44 Liquor Mart, the part of the opinion that I think that they're leaning the heaviest on is this idea of the greater includes the lesser power. It's the part of the opinion that rejected the Posadas approach. It's also related to not the exact same thing, but it's in the same area where they're talking about government doesn't have special authority to regulate vice activities. But that greater includes the lesser, I mean, that was in the part of 44 Liquor Mart that was rejecting the state's arguments that justified the price advertising bans that they had there. That's not our justification here. We're not saying that we could outlaw marijuana and therefore we can impose the restrictions that we do. What we're saying is that marijuana business is outlawed, it is illegal activity. You look straight to Central Hudson, Central Hudson says it's the first step, and if it's illegal activity, then the government, and this is what Justice Marshall said in the Flipside case, if it's illegal activity, the government will regulate or ban it, end of story. That's our view. The commercial speech provisions in the Cannabis Act are part and parcel of the whole approval of the medical marijuana industry in Mississippi, correct? That's in one act. Correct, it's all one. So why isn't the whole act a nullity? Why isn't Mississippi? Do you understand my core question, call it a stop or call it dirty hands, how can Mississippi be promoting and getting revenue off something they're now going to come into federal court and say it's all a crime? They've not brought that claim. That claim might be interesting, but I think that the key thing when you're talking about the equities, and it relates to the second defense, right, about equitable relief, I think the key thing here is it's not just the Controlled Substances Act and the fact that it makes marijuana business illegal, but also the fact that it makes advertising marijuana business illegal. So if a federal court, if the district court here, if a federal court were to grant an injunction or declaratory relief that says, hey, plaintiff's here, you can go advertise your marijuana business, what that injunction is doing is directly overriding the Controlled Substances Act, 21 U.S.C. 843 BNC that prohibits advertising, the federal court has just licensed someone to go violate that, and frankly, that's beyond federal court's authority to do. The best case to look at for something like that is Oakland Cannabis, which is actually coincidentally kind of in the same universe here as marijuana cases, but the point there being that— But I mean, even accepting your sort of severability argument, that this is only B, this is only advertising, why isn't Mississippi violating A? Mississippi is promoting a crime, the exact same argument. I think that it all goes together, but I mean, the simplest way I can put it is we're not asking for relief. We don't want an injunction that says X. They do, and that's what is the problem with the relief that they're asking for. Federal courts don't do that. You can go all the way back to the cartilage case that we cited in our briefs. As again, I said, Oakland Cannabis, I think, bears on this. But Pennhurst is no obstacle for us enforcing the First Amendment. I'm sorry? Pennhurst is not an obstacle for us to enforce the First Amendment against state officials. Well, that's right. Let's be clear how Pennhurst comes in. I mean, the district court brought it up in its opinion, but Pennhurst is what makes this case different from a case, say, like Seattle Events, right? Because Seattle Events, what the plaintiffs there did was they went into state court, and they made a federal claim and a state claim. Plaintiffs here have come into federal court making only a federal claim. If they'd made a state claim, yeah, we would have raised Pennhurst and said, hey, you got to go do it in state court, and then you'd have Seattle Events. And the key thing about what happened in Seattle Events and what makes it, sets it apart from Montana Cannabis, what sets it apart from our view of the way that Central Hudson works here is the state court there conducted the Central Hudson analysis. They said, oh, under the state constitution and the federal constitution, commercial speech, we look at Central Hudson. They get to prong one, and only the state claim mattered. Oh, this is how we get around it, where we say, oh, they're bringing a state law claim, so we can skate right past the first step, and we go to the second, third, and fourth steps, and ultimately upheld the regulations there. But you don't have that feature here. One reason you don't is because of Pennhurst, but I think that that's what the district court was pointing out there when he raised the Pennhurst state law claim issue. A couple of other things that they mentioned in their reply brief that I haven't had a chance to respond to that I want to make sure to hit, but there's cases that revolve around the rule that you can get past the first step of Central Hudson when there's a solicitation for a transaction that's possibly legal. These are like the day laborer cases that they cite in their brief, Centro versus Oyster Bay. I don't think that they cited the Second Circuit version of it, but the point there being is when you make the solicitation, it may or may not be illegal because the person that you may be asking to come work may or may not be illegal. You don't have that here. Everything that they sell is illegal in some way. Now, they mentioned in their reply brief that they sell marijuana and then as part of their marijuana business, they sell marijuana equipment. Marijuana equipment is drug paraphernalia. Drug paraphernalia is also illegal under the CSA. As an interesting point of fact, it's why you only see the drug paraphernalia cases in the early 80s, Flipside, CASBA, Washington Mercantile, and so on and so forth. They were in the early 80s because it was in 1986 when Congress enacted 21 U.S.C. 863 to outlaw drug paraphernalia. All of a sudden, no more drug paraphernalia cases involving Bigelow Rule or otherwise because it's all illegal. We covered the educational materials issue. We covered the equitable relief points. So if the court doesn't have any further questions . . . Just one last one. It's back to an early one. It sounds to me like you've said clearly that they can promote through advertising the safe use, right? Not overdoses, et cetera. They can do that according to the regs and the statute in your position in front of us. Under the regs, yes. It's educational materials. And the regs say that's not advertising, that that's not prohibited advertising under the regs. All right. Thank you, Mr. Bethany. Mr. Bargill for rebuttal. Just a few points I'd like to address. I think I want to start with some of the discussion about the lack of cases that are squarely on point. I wanted to just make sure the court was aware. Again, they have the burden on every single prong. And to the extent that there are not any cases that are directly on point here, it's also the case that when in doubt, the case law is that it's better to err on the side of free speech. That's in footnote three of our opening brief. And I think that might be appropriate here, especially given some of the discord that I think I'm now hearing about what the act actually means. To your question, Judge, you asked them, could they promote the responsible use of medical cannabis? My understanding under a plain reading of the rules is absolutely not. They can sell educational materials, and they can also sell equipment and related supplies. He's saying all of that stuff is regulated by the Controlled Substances Act. That's just not true. Some of it you can buy at Walmart. On the question that your Honor asked about, well, what if Congress changes its mind? I think that's a perfect example of what the Third Circuit in the Greater Philadelphia Chamber of Commerce case, and the Second Circuit in Eastern District of New York in Oyster Bay. Both of those cases involve scenarios in which the government was trying to regulate something that was attenuated and wasn't directly related to prohibited conduct. And so where there's some intervening inquiry where you have to look at not just state law, but at something like, well, what has Congress said about that? That intervening inquiry is something that strongly implies, and the courts have said, mitigates in favor of advancing beyond prong one of central Hudson. And I think that's true when we talk about the equitable relief that we're asking for here. Again, the Second Circuit in the Northeast Patients case, Finch, the Seventh Circuit decision, both of those cases involved challenges to medical marijuana regulations. The courts afforded and provided equitable relief in those cases. And both times the courts acknowledged that yes, this is something that's illegal under federal law, but we're not going to sit here and sit idly by after having concluded that somebody has violated the federal constitution. In the words of the district court in Finch, two parties were trying to engage in what was essentially an illegal act under the federal laws. Because they were trying to sell medical marijuana. And the court said, but only one of those parties has soiled the federal constitution and granted equitable relief. Something that the Seventh Circuit said was a sensible equitable judgment. I want to touch finally on one of the things that he mentioned. He said, look, it doesn't matter, we can't go ahead and regulate on the basis of political party affiliation. That's exactly what this argument means. They're saying you can't afford equitable relief. They say it in their response brief. That to the extent that this court finds that there's a First Amendment violation, it actually can't do anything about it. And in that sense, they're saying that my client is on the same legal footing as a street level drug dealer. And that just can't be the law. Thank you. Thank you, Mr. Bargill. Your case is under submission. Last case.